18 So.2d 291

**BENNETT v. STATE.**

**7 Div. 764.**

Court of Appeals of Alabama.
May 23, 1944.

436

Beddow, Ray & Jones, of Birmingham, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

RICE, Judge.

Minnie Mae, who weighed 106 pounds, was seventeen in May 1942. On or about the 14th day of July of that year, she got in a car with appellant and one Grady Scoggins and went for a ride.

The way she told it, substantially, was that she was alone on a viaduct over the Southern Railway (a street), in the City of Anniston, when appellant, a 34 year old married man, weighing 175 pounds, driving a two seated, four door, automobile, and accompanied by Grady Scoggins, a twenty year old married man, weighing 165 pounds, pulled up beside her.

When she said, in answer to a question by one of the men, that she did not want to ride, Grady Scoggins, according to her story, got out of the car and forcibly placed her in the front seat between himself and Bennett.

They then, over her protest, and against her struggles as she told it, took her for a long ride, extending to Gadsden, and back to Anniston. She said they stopped at at least two "road-houses," where the defendant (appellant) and Scoggins drank beer; but where they kept watch over her so that she could not escape.

Sometimes Bennett drove the car, and sometimes Scoggins drove, she said. And either while the car was moving, or when it was stopped on the road, or roadside—not the main Anniston to Gadsden road, but one that turned off it—she said she was ravished four times, twice by Bennett and twice by Scoggins.

And she escaped from the car by a ruse, she said, after they had returned to Anniston, and promptly reported at the nearby house of friends, or those who assumed the role of friends, to some people that she had been abducted and raped as indicated above.

Appellant and Scoggins testified that they took the ride with Minnie Mae, substantially as outlined above. They admitted that they, each, had sexual intercourse with her—but only one time apiece.

They tell it, though, that Minnie Mae accosted them on the viaduct, and asked to go with them to Gadsden. And that everything that was done on the trip was with her full and voluntary consent and co-operation.

If ever there was a case where the issues raised were for the jury to decide, it would seem that this was the case.

Appellant was indicted, tried, and convicted for and of the offense of rape; and his punishment fixed at imprisonment in the penitentiary for the term of ten years.

He is represented here by able counsel, who have filed an elaborate brief in his behalf. And while we have endeavored to perform our full duty under the provisions of Code 1940, Tit. 15, § 389, yet it seems

to us not worth while to mention any other matters than those discussed by counsel in their said brief. Accordingly, we will take up the question so treated by them, in the order in which they occur.

Their first contention is thus phrased: "It is respectfully urged for the consideration of the court that the verdict in this case is contrary to the overwhelming weight of the testimony."

Able counsel then argue astutely, as they have demonstrated to this court so many times they are capable of doing, that the judgment of conviction should be reversed because of the failure of the learned trial court to grant appellant's application to set the verdict of the jury aside because of its being opposed to the great weight of the testimony.

But we are not persuaded. We believe we have sufficiently indicated the situation with regard to the testimony in the case above.

The young lady's testimony makes out a case of rape, as that term has, in effect, been defined by us. Clark v. State, 28 Ala. App. 448, 186 So. 778, 779. In numerous respects the story told by her is corroborated by the testimony given by appellant and his companion Scoggins.

True, the jury indicated all too plainly—since their verdict would have been indication enough—that they considered the minimum punishment provided by Statute, Code 1940, Tit. 14, Sec. 395, ample in this case. But that was a matter that addressed itself solely to the jury, and we see no reason for our interfering with their verdict. As we said in our opinion in the case of Clark v. State, supra, we repeat, here: If it appears that the young lady in question "raped too easily" this was a matter for the jury's consideration.

Never, we believe, would there be found a wealth of testimony, other than that given by the injured party, on the precise point of the forcible and unwilling intercourse by the defendant with the complaining woman.

That found in the record of this case is sufficient. There is no error in the action of the trail court being here discussed.

The witness Ernest Tidmore having given testimony disparaging to that given by the young lady claiming to have been raped, and having sworn that he was unbiased against her, we think there was no error in allowing the witness Chester Gorman, in answer to the proper predicate, to testify to the activity of said Tidmore in behalf of the appellant and his companion Scoggins—which activity tended directly to disprove his statement that he was without bias against the young lady. Sullivan v. State, 25 Ala.App. 140, 142 So. 110. At least it tended strongly to prove his bias in favor of the appellant— which, in the circumstances, we believe amounts to the same thing.

It is our opinion that the testimony of L. B. Thurman, of the admission of which complaint is made, tended directly, after proper predicate, to impeach that given by the witness Dorman. We see no error here.

We cannot see that the young lady who claims to have been raped, who will be designated the prosecuting witness, should be held accountable for what her mother may have said in the presence of the witness Ernest Tidmore about what "she was going to do with the money she got from these boys" (meaning appellant and Scoggins). The question as it appears in the record was objectionable as calling for hearsay testimony, and as assuming a fact of which there was no proof, and as for being too indefinite. The objection was properly sustained.

As stated above, we have, in addition to giving close attention to the brief filed here on appellant's behalf by able counsel, endeavored to perform our full duty under the Statute which controls us. But it seems unnecessary to go more into detail.

The State's testimony supported the charge of rape. The appellant's was to the effect that the young lady copulated willingly. This posed a jury question.

The jury has spoken.

Let the judgment be affirmed, is our order.

Affirmed.