56 So.2d 687

### FOWLER v. STATE.

5 Div. 334.

Court of Appeals of Alabama.

Jan. 22, 1952.

Ellis & Fowler, Columbiana, for appellant.

Si Garrett, Atty. Gen., M. Roland Nachman, Jr., Asst. Atty. Gen., and Wm. H. Sanders, Montgomery, of counsel, for the State.

PRICE, Judge.

Appellant was indicted for and convicted of the offense of assault with intent to ravish, and was sentenced to ten years imprisonment in the penitentiary.

The alleged assaulted party was Ruby Jean Ray, a girl nine years of age. She was defendant's niece, being the daughter of his wife's sister.

The State's testimony was to the effect that defendant drove to the Weogufka school about noon and sent a message by a pupil to Ruby Jean. In response thereto she came to the car and defendant asked her to leave with him, saying his wife and children were at Ruby Jean's home and he wanted Ruby Jean to go stay with them until her mother returned. She declined to leave with him and went back to the school lunch room.

Defendant sent another pupil to Ruby Jean and she came back to the car. He again asked her to go with him and when she refused he grabbed her by the arm and pulled her into the car. Instead of driving towards the Ray home he turned in the direction of Sylacauga, saying he had some whiskey up the road. He drove up the highway to a little creek or ravine about a half mile from the school and stopped. He asked the little girl to go with him to get some minnow baskets in the creek and she refused. He then asked her to get out of the car and go with him for a drink of whiskey. She again refused and he went to the creek and got a bottle and put in under the car seat. He told the girl he couldn't start the car and they would have to walk through the woods and fields to her home. As to what then occurred we quote from Ruby Jean's testimony:

"I said no, you go through the field and I will go down the highway and he caught me by the arm and drug me down in the hollow then he pulled off his cap and throwed it down and jumped and caught me by the feet and throwed me down on the ground and said, pull down your panties and I said, I am not going to do it. He said— after he told me that—he was holding me down with one hand and was trying to pull off his coat and he kinda stumbled and fell over and when he did I jumped up and started around a tree and he caught me by the dress.

"Q. What, if anything, happened to your dress when you say he caught you by the dress. What happened to it, if anything? A. He tore it around the waist.

"Q. I will ask you to state whether or not you pulled loose from him and kept running? A. Well, he was laying at the

foot of a tree and I couldn't get away any other way—

"By Mr. Fowler: We object. That is a conclusion: 'I couldn't get away from him no other way.'

"By the Court: Tell what happened.

"Q. What happened. You say you went around the tree? A. Yes, sir, I started to go around the tree and finally I managed to get away and ran upon the highway and back down the highway down to the vocational building and mother and Mr. Rayfield met me down there."

According to the evidence, both for the State and defendant, Fowler had spent the morning at Ruby Jean's home, where he had taken several drinks of whiskey, and Mrs. Ray had prepared lunch for him.

Defendant admitted getting the girl from school and driving to the point testified to by Ruby Jean. He claimed Mrs. Ray told him she and her husband were having trouble and if the children were at home she would go home with defendant and asked him to get the children from school. He testified the girl went with him willingly but become impatient when the car wouldn't start and he merely tried to keep her from leaving the car. He denied making any improper advances to her.

 Under the decisions of our courts the doctrine is well established that "on a charge of assault with intent to commit rape, the evidence, to be sufficient to justify the conviction, should show such acts and conduct on the part of the accused as would leave no reasonable doubt of his intention to gratify his lustful desire against the consent of the female and notwithstanding resistance on her part." Pumphrey v. State, 156 Ala. 103, 47 So. 156, 157; Samuels v. State, 34 Ala.App. 13, 36 So.2d 561; McGee v. State, ante, p. 276, 55 So.2d 223, and cases there cited.

Applying this principle of law to the evidence in this case, we are of the opinion the court properly submitted the question of the guilt or innocence of the defendant for the consideration of the jury, and that the evidence was sufficient, if believed by the jury, to sustain the conviction of an assault with intent to rape. Therefore, no error resulted in the court's action in refusing the general affirmative charge nor in denying defendant's motion for a new trial on the ground that the verdict of the jury was contrary to the evidence.

The torn dress worn by prosecutrix at the time of the assault was properly admitted in evidence. Crim.Law, ☞404 (4); Burdett v. Hipp, 252 Ala. 37, 39 So.2d 389; and cases cited therein.

There was no error in the refusal of defendant's requested charges B and C. These charges were not predicated upon a consideration of the evidence in the case. Welch v. State, 156 Ala. 112, 46 So. 856; Davis v. State, 188 Ala. 59, 66 So. 67; Dukes v. State, 210 Ala. 442, 98 So. 368; Bush v. State, 211 Ala. 1, 100 So. 312; Cawthon v. State, 254 Ala. 35, 47 So.2d 200.

There being no reversible error in the record, the judgment of conviction is ordered affirmed.

Affirmed.